My name is Ethan Ballot and I represent Benjamin Campos Gonzalez. This morning I will speak for all three appellants on the issues presented in the consolidated briefing, but I plan to pursue issues number one and two, and I'm prepared to, of course, answer questions for issue three. I'm going to do my best. By the way, my colleagues, Mr. Mazur, Ms. Fullerton, and Mr. Byers have ceded me their time. I'm going to go for 20 minutes on the first two issues, and Ms. Fullerton is going to argue the obstruction issue with the five minutes I leave her. I'm going to do my best to save two. I'll watch my clock, and I ask my colleagues or Your Honors to tell me to sit down if I get to the 20-minute mark. Roberts. Okay. Flores. Thank you. Let's begin, if we can, with — Roberts. We'll reset it to 25 minutes just to — Flores. Thank you very much, Your Honor. There we go. I want to begin with the wiretap issue. In the weeks and months after the December 18th and December 20th shootings, Benjamin Campos Gonzalez, neither Benjamin Campos Gonzalez, Victor Flores, or Armando Acosta used their telephones to call or discuss the homicides and shootings with anybody, not once. The record in the affidavit by Detective Oglesby reflects that on the day of the second shooting, that's the Cypress Park Loco shooting, a witness at the shooting was informed by the police of the shooting. She called Acosta. That was the one conversation he had, which was the day of the shooting. He basically says, I bet it was Joey. Got to go, meaning Joey Ortiz, who was the shooter. That is the sum total of evidence that these three gentlemen used. Can I — I was having difficulty understanding your argument in the brief, so maybe this is helpful to me. Yes. Are you arguing that there was no probable cause to think that a wiretap would produce evidence, or are you arguing that at the time that the order was issued, the evidence was stale? I thought it was the second. Now you seem to be arguing the first. We argued both. But the distilled argument that I'm going to present today, which I think is the better of the two. I think it's stale, but I don't think that's dispositive nearly as much as the probable cause question. Detective Oglesby targeted ten telephones in May of 2011, and the question presented at the district court and presented again here is, what evidence existed to support a strong suspicion that these target telephones would be used to discuss the completed acts of the December shootings? What do you do with the March call, which by itself is not — is not terribly inculpatory, but it means that Mr. Ortiz is finally now making phone calls back to the United States? I don't think it necessarily means that. I think we deal with it. And what we deal with is that's the sole phone call in the five months which is exculpatory, and it involves a telephone used by Robert Aguayo, which is target telephone number 10. So at best, what they could say, assume that — and that call was exculpatory. I would say it helps prove there's no probable cause to be their future phone calls because I think in the parlance of the streets, from Ortiz's perspective, the matter was squashed. He had the phone call with Aguayo. Aguayo puts him on the phone. He says, I had nothing to do with it. I'm on the lam because of a warrant. And then after that, there would be no further reason to believe that he's going to say anything. But if we go back to the — to especially appellants, there's nine other target telephones. And there's absolutely zero evidence that any of those people on those telephones use them — use these devices to talk about the completed acts. And what the government's burden is, is to show there's a strong likelihood that these people in May are going to pick up the phone and start talking about a six-month-old shooting. When you say the completed act, tell me why that's a requirement of Title III. Well — Isn't it enough if they talk about the crime? Yeah. The crime. The past tense crime. And the affidavit and the order, the only authorized T3 crimes they could investigate were the December 18 shootings and the December 22 shootings. Three people died on the 22nd. No one else died in either shootings. But that's it. So there — you have to have probable cause to believe that they're going to talk about that event or those events past tense, which separates this case from if they were investigating, let's say, the gang was distributing drugs on a regular basis. It's an ongoing, continuing enterprise committing crimes over the act, over the telephone lines. Then a T3 could identify predicate acts of drug dealing and say, we have probable cause to believe they'll continue to talk about drug dealing. But where the issue was, was presented, was the attempted 187 and the 187. And importantly, the affiant, Oblesby, when you look at page 1461 of the ERs, when he lays out the unstimulated and stimulated phases, he gives six goals of the unstimulated phase. And none of those goals is to obtain information about the homicides and attempted homicides. Rather, he then says on 1462, continuing to 1463, the evidence of discussing the homicides and attempted homicides will come later, two weeks after the wiretap is up, and once we stimulate these conversations by approaching targets and confronting them with evidence about the shootings. And so Oblesby's statement is, in fact, in my perspective, a confession that at the time the tap goes up of these ten separate telephone lines, there's not probable cause to believe that any of these people are going to talk about this sua sponte. And that's the showing they have to make. The moment the line comes up, there has to be probable cause to believe that interception of those lines will obtain inculpatory evidence. Is there some difference between the various lines here? Some of them are family of Ortiz. Yes. They've spoken in the past about at least, you know, he's fled, people think he may be the guy who did this, even though they don't say he did it. Is there probable causes to some of the lines and not others? And if so, how do we sort that out? That's an excellent question, Your Honor. I do believe each line gets evaluated on its own. I would disagree a little bit factually. I think the evidence is the week of the murders or the shootings, there's conversations. The mother says a couple of times, my boy's on the loan. He's not on the run. He's not coming back until his name is cleared. And I think the government does a good job. You look at their brief. I think it's pages 19 and 20. They identify all the phone calls they think connect to the shooting. Importantly, none of these appellants. And you're right. I think the district court's role was, job was to, one, assess each target telephone line and describe this probable cause. If there was probable cause from individual lines, she could uphold the tap and she would have to suppress the lines that didn't meet the showing. If she did that, this is Judge Ilston, then at that point there would be a fruits analysis because there was further wiretaps down the line. There was a Federal wiretap. And she would do a fruits analysis under Castigar and figure out what would come in and what would go out. We've actually attacked it facially here because the only call that exists is the March call. And since the March call is exculpatory in one time, the finding of the ---- I don't know that it's exculpatory. It's tell people I didn't do it, get them off my back. I guess if I had people chasing me, I would make that phone call, too, whether I did it or not. Right. But I think, with great respect, Your Honor, I think the statement I didn't do it is the definition of an exculpatory statement. It may be self-serving, but it's exculpatory. A denial is the definition of exculpatory. It's not inculpatory. So I think the judge's factual finding ---- Actually, I think he asked why they thought he had did it, right? No. I think he just said I didn't do it. I'm on the lam because of a warrant. Apart from him, that exculpatory thing, I think the other government's evidence is these target subjects have evidence and understanding that they're under electronic surveillance. So they're even less likely to use these phones in May to talk about six-month-old events. But ultimately, I think there's no ---- I don't think it comes close to establishing it, especially for the appellants. And I want to address briefly, if I may, the Leon argument. The government says good faith applies, and I want to give four reasons why it doesn't. One, we didn't brief this, but I was, again, reading the statute this morning, and Congress was plainly aware of the good faith exception as an idea when they passed Title III. And all you have to look is, you know, Title III, the section we're litigating is 2518. If you look at 2520, it discusses the civil ---- the ability to prosecute civil wiretap claims. And 2520d gives a good faith defense for a civil suit. And 2518 doesn't. So Congress has to be ---- it's clear they're aware they could have carved out a good faith exception, but they didn't. And I think this is why Judge Silberman and Glover and the Sixth Circuit and Rice do a very clear analysis that the text doesn't support a good faith exception, that the legislative history demonstrates that 16 years before Leon that they don't include a good faith exception. Importantly, when they have the remedy, the statutory remedy, they declared a nonconstitutional remedy. So Congress did the balancing and said if there's a violation of the act, suppression is mandatory. So you can't engraft Leon out later. And the third reason is a dovetail. Fourth Amendment suppression would be a ---- it's judicially crafted as a way, as a prophylactic rule, which is obviously much different when Congress has done the ---- done the balancing itself and mandated suppression. So those would be my arguments on the issue one. Pivoting, if I may, to the constructive amendment or prejudicial variance question, the grand jury indictment charged these three gentlemen with participating in the enterprise ---- Because you don't have much time. Can you cut to the chase? I mean, the ---- what should the district court have done? I mean, look to me that I caught was pretty careful. Gave an answer and then gave an explanation. And then ---- and I was thinking if I'd been sitting in that chair, what would I have done differently? And I couldn't really come up with much of an answer. Okay. I think it's two points. I'll get right to it. I think she should have answered the question no. I think the answer she gave was a theoretical answer. And in the abstract, her answer is correct. Well, how can she say no? I mean, no would simply be a wrong answer. No. It would be no in the context of this case if certain facts are found. But how can she give a categorical no answer? Well, she did reframe the question to support a categorical yes answer. So that is, I think, part of the problem. She reframed the question by her own admission. I think the answer should have been as charged in this case to find these defendants guilty, you must find they were members of the charged enterprise. When she does two things here. She gives the theoretical answer that you did reference, and then she later comes back to the jury after a defense request and says, look, I want to be clear. You know, I gave a theoretical answer. In this case, you need to look at the instructions as I gave you in the indictment and make your decision. And then what I'm getting to is the instructions themselves are not something you objected to. No. We're talking about a supplemental jury instruction only in this case. Right. So if the judge says eventually, look, I don't want to confuse you, which is what she's basically saying. In this case, you've got to go back and look at the indictment and the instructions. How were you harmed? Let me ask that in two ways, Your Honor, to see if that's an excellent question. One, they couldn't link it up to the indictment because the judge had given them a redacted indictment. And if you look at the indictment that's in RERs at page ER-1119, you'll see that that indictment identified Mr. Flores and Mr. Campos-Gonzalez as members of the enterprise. What volume was that? A volume. This is volume — this will be volume 5 that I'll cite, and it'll be — it's ER-1119. And so it — Hold on a second. Okay. Take your time, Your Honor. 1-1-1-9. 1-1-1. Okay. Okay. So now the indictment charges them as membership, and this is how they're going to participate in the enterprise. The problem is, and I don't have the page set up — I'm looking at 1-1-1-9, and so tell me where I'm on 1-1-1-9. Paragraph 14. The defendant, Flores — Has been a member. The defendant — Campos Gutierrez were members of the C Street gang. So was that redacted? Yes. Exactly. And the government, in their supplemental excerpts of record, have provided the redacted indictment. So the jury didn't have paragraph 14. The jury didn't have paragraph 15, 16, 17, 18. 18 is the one that talks about Mr. Acosta. 19 or 20 or 21. And so the jury didn't have the tools to do what Judge Ilston asked them to do. And the second pivot of my answer, if I could, is just a straight application of the Supreme Court's work in Bolombac, which this Court recently decided. We had a Rule 28J with Castillo-Mendez that says what she told the jury, this is theoretical, is improper. There are no such thing as theoretical instructions. When a jury has a question, it's the responsibility of the jurist to answer it with concrete accuracy. And what were you citing there? Bolombac or Castillo-Mendez. I was citing Bolombac. It's a Supreme Court case, and I can give you the citation for it. It's in my brief. That's okay. I just want to know. Castillo-Mendez. You seem to be quoting something that you said is theoretical indictment. Oh, yes. Maybe you weren't quoting. Maybe you were. No, it's Bolombac. I was quoting. Thank you. Bolombac is 326 U.S. I'll give the 612 to 613 site. Instructing district courts about sublime instructions must clear, quote, clear away with concrete accuracy any confusion when the jury asks the question. And I have to say that theoretical answers are not okay. Oh, well, may I have a moment, Your Honor? Which is what I thought you said. I mean, if you had a case that said that, that would be very useful to you. It would be very useful to me. I mean, the way you said it, it sounded like you were quoting. Oh, no. But maybe I just saw quotation marks when they weren't. No, I was really relying on you. You were just emphasizing. You were emoting. Well, I think what Davis says is jury instructions in the Seventh Circuit are not abstract treatises on legal issues. They are instead tailored instructions that state the applicable law in a specific case to aid a jury in reaching its verdict. That was the Seventh Circuit's view of it. That's why we call them supplemental jury instructions. So just in your case, you think there was not even a theoretical possibility in this case of finding? Yeah. I think it was charged as the jury, the government opened on they're guilty because they're members. The case charged they're guilty because they're members. And on the constructive amendment — In your view, the court has said they have to — you can only find them — you can only find them — Guilty if they're members. Guilty if you find them to be members. And I'll agree the government could have charged it differently. So the question then is, is this more like Howard v. Daggett when the defendant is charged with bringing prostitutes interstate, and they name two prostitutes only. The case goes to trial. They — those — the evidence about that woman is entered. Evidence about other women is entered. And they give a general instruction that you could just find he — he generally moved prostitutes, and you didn't have to make specific findings. This court in Howard found that's constructive amendment under Shipsy and Sterone. Is it more like that, or is it more like Adamson where they charged the person with making false representations that he had done a computer upgrade on a company's computer system, but then the trial theory conviction was, oh, he did upgrade it, but he misrepresented the means that — how he did it. They said he used an unauthorized product. And it's hard, I think, as both Adamson makes — Adamson and Shipsy make clear, it's a tough divide between those. But the government was clear in this case, and it relates to our third issue I'm not going to discuss. You know, I'm just wondering, if the court had said what you claim the court should have said, wouldn't — were you the trial counsel? I was not, Your Honor. Wouldn't trial counsel have jumped up and said, you are now instructing the jury to find my clients guilty of being members of this gang? I mean, I can see an objection from the defense to the kind of answer that you have offered. It would have been difficult on this record because they urged the answer I asked. I'm asking. I'm — I am parroting what trial counsel — we do have able trial counsel here. It was a mostly successful case for the defense. I'm parroting what they said at the time. Your Honor, as charged in this case, the answer has to be yes. And you can cabinet like that. But as charged, they charge participation through membership. And Mr. Campos, my client, he — Mr. Hanlon ran the table. He only went down on the conspiracy. And the thrust — the only part of his defense that was rejected was, I'm not a member of C Street. And that was a big part of his defense. And after closing arguments, after instructions, after Rule 30 happened, that defense evaporated by this inaccurate answer. And that's maybe why it's more prejudicial variance. He — if he had known that this was a possible instruction, he might have defended the case differently. He might have focused on the association. We understand. You're running out of — I'm running out, and I'll sit down. I'll reserve my two and a half, and I thank you, Your Honor. Okay. Mr. Barlow, who were you representing? I represent Benjamin Campos Gonzalez, Ms. Fullerton Armando Acosta, and Mr. Mazur, Victor Flores. Okay. Thank you. Thank you, Your Honor. Good morning. I'm Linda Fullerton, and I'm representing Mr. Acosta. And I'm going to be talking about the obstruction counts 20 and 21. And I think the issue to both of those comes down to the fact that there is no nexus between the acts that were taken and a specific crime, and there was no proof that Mr. Acosta had the specific intent to obstruct the specific crimes. When you say specific intent, you agree that the cases say he doesn't have to have the intent to obstruct a specific proceeding, State as opposed to Federal, right? It doesn't have to be State as opposed to Federal. He doesn't need to know that it's Federal nature. I do believe the cases state that he has to be directed towards a specific proceeding. Is that right? So let's assume I'm a really dumb defendant. I don't know how the criminal system works. But I know if there's evidence, it will hurt me, and so I destroy it. Then there's no obstruction because I haven't aimed it at a specific proceeding? Well, I think the jury instruction has to be that you at least had the intent to obstruct a proceeding. There has to be a jury instruction that tells the jury. As opposed to just the intent to obstruct justice in general. Well, there has to be. In this case, the jury instructions were kind of void on what the intent had to be. We they were that's what's missing from them, is that they didn't talk about the fact that you have to have the specific intent to do this action to, in fact, obstruct a particular. And you think, I'm just trying to get your position clear, you think the specific intent has to be to obstruct a proceeding as opposed to the specific intent to destroy evidence? I think, yes. In this case, as to Mr. Acosta, I think that's actually true. So it would not be enough, in your view, if I said I'd better destroy this evidence because it will come back to haunt me if I don't have the specific intent to obstruct a proceeding? Well, in this case, Mr. Acosta was charged with the destruction of evidence and was found not guilty on that. He was found guilty on obstructing proceedings. And so I suspect, looking behind the verdict on that, that they did not feel that it was any actual destruction of property that got him into that position, but that it was things like misrepresenting things to the jury. Was bringing Mr. Ortiz's brother to him and then staying there overnight to keep him. Right. Those actions, those actions were done with the specific intent to interfere with a proceeding. And I think that you needed the jury instructions to lay out that connection, and they did not do it. And I don't think the evidence shows that that was necessarily, beyond a reasonable doubt, what Mr. Acosta's intent was. There was a further investigation going on at the time he acted, right? By the, I think, the last phone call. Up until then, no, there was not. Wasn't there a parallel Federal investigation that merged with the State one that was occurring before even the phone calls? There was a Federal — there were Federal investigations into various Norteño groups. The C Street 500 block, these group of young men, there was nothing Federal going on at the time. The record's not terrific on this, but it looks to me like two groups of people were investigating Mr. Ortiz, and they didn't realize until they came together that they were investigating the same thing. Am I — is that a mistake? I think that's a mistake. I don't think Mr. Ortiz was being Federally investigated until after the shootings. And if I might just have a moment. I —  I am quite sure that he was not, but I cannot say that with absolute certainty. My understanding was that the Federal investigation came in later. So your answer to Judge Kaczynski's question was the Federal investigation hadn't begun? That is my understanding, that the Federal investigation had not begun on C Street 500 block. I know that there was Federal investigations going into various Norteño sects, but not, to my recollection, to this group of young men until after the triple homicide. The Eighth Circuit case, Petrak, which is, I think, helpful to you. Yes. Does — but it sort of blows hot and cold a little bit in that it says you don't have to have an ongoing investigation or even a soon-to-be-started investigation. So they sort of do away with the temporal component, but then later on in the opinion they seem to consider temporal timing after all. So I'm not exactly sure what to make of it. If there's no Federal investigation going on, but one might be worried that there would be? Correct. I think — That's probably enough, right? Correct. And if you look at the facts of this case, there would be — there's no facts that were brought forward that would lead someone to believe until actually the arrest started that there was any Federal investigation. The wiretap was a state wiretap. How about the fact that the Feds are getting into everything? I don't mean that facetiously at all. I mean, but the fact is you must remember a time, because I remember a time — I mean, it's from all of us contemporaries — when Federal prosecutions of street gangs was unknown. Correct. So if you were out there doing what street gangs do, you know, you don't have to put lightly, you know, killing, you know, doing the street warfare, you might be worried about the state authorities coming in, but it wouldn't be thought that there'd be a Federal investigation. And then I think in the 90s maybe it started? Late 80s it started. Yeah. It started in Richmond, San Francisco and moved into every place. Right. And after that point — and this, of course, is much later — can't one presume that if you are sort of in a gang environment, you're always, you know, supposed to be anticipating the possibility that, you know, the state people might get you or the Feds might get you? I think there are certain — certainly if you're an active group of people doing heavy crime, I think that is something that one would expect looking over your shoulder. This is not exactly shoplifting. Well, up until this happened, this area of San Mateo was like shoplifting. There weren't killings. There were not crimes of violence. I think there were one or two shootings in decades in that area. But where I'm having trouble with your argument, and Judge Kaczynski's question brings it into focus for me, is that you must be arguing that there was no reason to anticipate any state proceedings. Right? Because if there was a reason to anticipate state proceedings, I don't know how — I mean, I don't know how somebody could make that distinction in his mind. I anticipate state proceedings, but not Federal ones. Okay. If I could kind of address some of that. I think the jury instructions don't tell the jurors to look at anything which is problematic as far as the specific intent. So the jury was left to just find, is there this behavior or is there not this behavior that could be construed as obstruction? And they don't have to because it wasn't instructed and it wasn't objected to, I will admit. They didn't have to look at what the intent of Mr. Acosta was. So that's step one. Step two is that most of what Mr. Acosta did was right at the very beginning, and that behavior was all state police were around, state — well, county police, which would be from the state court system, were around. Everybody that was being questioned was being questioned by county police or sheriff's departments and local police departments, and there was no indication that anything except the local was going on. Does that answer your question? I think so. I'm — I'm — I'm just — I'm mystified by the statute in general. But, I mean, the notion that — that a street gang member ought to be saying to himself, hmm, am I anticipating Federal proceedings or State proceedings as a — as an element of the crime strikes me as problematic? Well, I think it isn't just, hey, you have to obstruct any proceeding. I think that you have to be, if I am reading the cases correctly, a specific proceeding, but you don't have to know — for example, you have to be obstructing a grand jury, but you don't have to know that that would be Federal in nature. I don't think you can say that, hey, the obstruction goes to any potential proceeding at any given time. I don't think the statute is that broad. I thank you for your answer. I'm — I just wanted to tell you what was troubling me about it. Thank you. Thank you. We'll hear from the government. Good morning. May it please the Court. I'm Douglas Wilson on behalf of the United States. I'd like to start with the wiretap issue. Our position is that — that after 4 months and 13 days, not 6 months as — as counsel represented, probable cause continued to exist for the murders. That is, when the — when the State judges signed the wiretap authorizations on May 4th, the — the probable cause continued to exist for the December 22nd. Nobody contests that, I take it. What they're contesting is whether there was probable cause to establish that evidence about the murders would be found on these phone lines. And we — we — our answer to that question is yes. But that's the only — they're not contesting that there was probable cause to think that the murders had — had been committed by Mr. Ortiz. I agree — I agree with that, Your Honor. And our position is that probable cause continued to exist as of May 4th for the — for the — as of — for the December — late December shootings. Okay. But why was there probable cause to think that evidence about the murders would be found on these 10 specific lines? First of all, the — the murders and the shootings had been committed by a gang, which is, by definition, a conspiracy. So we believe that the conspiracy continued to exist. The gangs continued to exist. The — the victim gangs continued to exist. And there was — there was probable cause that the — that the gangs would continue to discuss this — this — these — these incidents over the telephone. Secondly, we showed that the — the gangs used the telephone and text messages to discuss their — their business, the business of the gangs. And it was — it was reasonable for the — the State judges to infer that — that they would discuss the — the — the murders or the — or issues related to the murders. They didn't have to discuss the specific, you know, I shot this person, I shot that person. They just had to discuss events related to the murders. Another factor is that the — the main person that was considered to be the shooter in both instances was on the LAM in Mexico. He was — he was a fugitive. And it was — it was extremely probable the Vance State judges who — who signed the affidavit or signed the warrants to search the telephones could have found that the fact that — that the shooter was on the LAM was a fact that — that gave rise to the possibility that — that he would use the telephone to call members of the gang, his parents, his or the wiretap affidavit was — was directed. So those factors, I think, support the showing of probable cause. Can you address the — the simulated — stimulated, I'm sorry, and unstimulated phases of the investigation? Do you agree that there had to be probable cause before any stimulation occurred? Yes, Your Honor, we do. The — the affidavit had to show probable cause as of the date of the — the officer signed the warrant and not as of the date of any simulation that occurred. So what do you do with the officer's statement that the way we expect to get really good evidence is by stimulating it? Well, I think the question is whether the affidavit showed probable cause prior to any stimulation. And I think that beyond that, this Court should not limit the amount — the information that — that State officers give to a magistrate judge and a wiretap. I mean, this is a question where they didn't have to — to set forth their strategy that basically surplusage. But is there anything wrong with that? Is there — is there any reason why the — the affiant shouldn't give a State judge his — his strategy? In addition, that may focus the magistrate judge a little bit more on whether probable cause exists, and therefore it's a good thing. The — the magistrate judge may look at that and say, gee, I don't think there's probable cause before the — before a stimulation, so I'm not going to sign this warrant. And in this case, the — the State judge did sign the warrant, but including that information in the — in the affidavit, I think, helps the — the magistrate judge show — or helps the magistrate judge reach a probable cause determination. One other point I'd like to make on probable cause is that only four months and 13 days went by, and the — the officers to obtain a wiretap had to show necessity. And I mentioned this in my brief, but — but the officers had done several events in addition to the wiretap in order to — to meet the necessity requirements. So is it your position they couldn't have gotten a wiretap in January? Well, in January, they — it would have been difficult to meet the necessity requirement in January if they — they would have had to show that none of the — none of the other investigative techniques would work at that point. And yet they used investigative techniques. They — the affidavit reveals that they — they relied on three confidential informants, they relied on a pen register, they — they got tips from various people, they interviewed members of the gang and — and people who may be involved in the shooting. So let me ask the question a little bit differently. If the — let's assume the March call had never taken place, and your — the officers had done all the things they'd done, exhausted other techniques, could they have obtained a wiretap without the March call? Yes, Your Honor. I believe — I believe that probable cause continued to exist regardless of — So your position that there was probable cause to get the warrant in January, but that there may not have been complete compliance with Title III at that point? That's — well, yes, Your Honor. It's the exhaustion requirement. The necessity requirement, exhaustion, yes. Right. Is the probable cause requirement in Title III coexistent with the Fourth Amendment, or is it narrower or broader? Well, I think it's been interpreted to be basically the same. That is, this Court's cases have said that the probable cause necessary to show a wiretap is the same as the probable cause under the Fourth Amendment. So I believe they're the same. On the — on the question of constructive amendment, the defendants do not challenge the initial instructions given by the Court. And in the initial instructions, the Court told the jury, among other things, that a conspiracy had to be — I'm sorry, a conspiracy was separate from the determination whether a person was a member of the enterprise. If that is true, if the defendants do not challenge that now, I don't see how the Court constructively amended the indictment by telling the jury that it had to go back to the initial instructions. Can you help us out with the — with what was redacted before it went to the jury? Were all references to these defendants being members of gangs taken out of the indictment? I believe so, Your Honor. Because there's more than — there's more than one. There's one on the page that counsel identified, but there's one on the very next page, too, with respect to — For some reason, I did not bring that with me, and I'm sorry. So let's assume that the jury got the instruction unobjected to that you talk about and found that these defendants were guilty because they were associates of the — of the enterprise. Isn't that a variance from the indictment, which said they were members of the enterprise? Well, no — well, the indictment specifically says they are members of the enterprise. Right. But the jury didn't have that. So given the instruction that the judge gave the jury — forget the supplemental instructions for a moment. Given the instructions that the judge gave the jury — I don't know whether it's plain error or not. It's a separate issue. Was the jury able to convict them for merely being associates of this conspiracy? Associates of the criminal enterprise alleged in this RICO conspiracy. I don't believe so, Your Honor. I believe that the government's evidence was that they were full-fledged members. No, that's what your evidence was. I'm asking whether the jury could have believed that they were members of the conspiracy even if they were — even if they only concluded they were associates. That was one defendant's — one defendant's defense was, I'm not a member of the gang. I'm just — I'm a hanger-on. He may have been wrong, you know, but in — that was his defense. And the judge said to the — didn't say to the jury, you have to find them to be members. And they didn't have the indictment in front of them that said they were supposed to be members. So why isn't at least that defendant prejudiced by this? I'm not sure I follow the court's question. I mean, the government's evidence was consistent with the indictment, whether redacted or not. No, I'm not — your evidence is fine. There's plenty of evidence. Nobody's attacking the sufficiency of the evidence on this count. What I'm worried about is this. We have at least one defendant whose defense was essentially, yeah, I drove the car, but I wasn't a member of the gang, and I didn't know what they were going to do. And you put on plenty of evidence he was a member of the gang. That's correct, Your Honor. The judge said to the jury — judge didn't tell the jury he had to be a member of the gang. The judge just said to the jury, you can be a member of the conspiracy and defined it probably correctly. And that is — that is what they were charged with. Right. But why isn't that a variance? Maybe it's only a variance. Maybe it's not a constructive amendment. From the indictment, which alleges that he is, in fact, a member. Because the — the indictment alleged that they were guilty of conspiring to be part of this enterprise, which — and the enterprise was defined in terms of the two gangs. But — so the instructions were consistent with the indictment, and so was the court's answer to the single question. So — so get back to my question. And you were — you think it's okay if the jury concluded that he was merely an associate, but — and I'm forgetting which defendant it is. I apologize. It's — it's Gonzalo. It's Campos Gonzalo. Campos. Thank you. I knew it was the hyphen. I didn't have to name it. Mr. Campos was only an associate of — of the gang, but conspired. That would be sufficient — you think that's okay? That would be okay under the — the indictment and the jury instructions, Your Honor, yes. But — but that was not the case. But — no, you say it was not the case because that's what your evidence showed. But I'm asking — But that's what's overwhelming, that Campos — The jury was instructed, however, that it could find him guilty if he were merely an associate, correct? If he conspired with the gang. Right. If he conspired. Yes, Your Honor. If he is — if he were merely a conspirator, I'm sorry, as opposed to a gang member, he could be found guilty. Yes, Your Honor. That's — that's correct. And that's — that was what he was charged with. So that's the indictment, the jury instructions, and the court's answer to the question. But could he — could he have been found to be a conspirator if he was not a member of the gang? If he was not a member of the gang, he could have been found if he were a — On this record? Pardon me, Your Honor? On this record? On this record, no. I don't believe so, but — And why wouldn't or shouldn't the judge have said, look, you cannot find — you can only find him to be a conspirator if he's a member of the gang? What's wrong with giving that answer rather than giving this theoretical answer and then qualifying it and getting lost in a — in a maze? I mean, I — I've been a juror, and I would have found that instruction less than clarifying. Was the instruction saying, no, if he's not a member of the gang, he can't find him to be a conspirator? That would have been pretty clear. That would have told him a direct answer to a question. What is this beating around the bush about? I don't believe there was any beating around the bush, Your Honor. Well, you said yourself they couldn't have found him. I mean, they asked the question, and the answer to the question was no, not on this record. Not on this record. There's no evidence of that. Theoretically, in some other case, it could happen. But the answer was on this record. The answer is no. But that's exactly what the court told the jury, that theoretically — Not exactly what the court told the jury. The court told — It's precisely what the court didn't tell the jury. The court told the jury that it was theoretical that the answer was yes. And as the court pointed out, the court would have mistaken the law. We didn't say theoretically yes, but not if you can't find him to be a member of the gang. Did the court say that? No, of course not, Your Honor. The court said you had to find him. Well, you say, of course not. But what's wrong with giving a direct answer that relates to the facts of this case? Because — The judge said, well, but you've got to look at the indictment. Well, you look at the indictment. It's not clear from the indictment because they have a redacted indictment. But the defendants aren't challenging the initial instructions given to the jury. And the initial instructions — I'm sorry? The defendants are not challenging the initial instructions on conspiracy given to the jury. And those instructions did not — But when the jury asks a question, we then focus on the question they ask. We no longer look at the initial instructions. We're saying, look, the jury was confused based on the initial instructions. Juries get confused. And at that point, they ask a specific question. And there was a specific correct answer that the judge could have given and said no. But the jury asked. Well, if you're not a member of the gang, you can't find a member of conspiracy on this record. Why not do something like that rather than, you know, that whole construct? Because the jury asked a theoretical question. It did not ask whether these defendants could be members of the — What do you mean they asked a theoretical question? You think that, you know, they were asking about how to fill out their wills or how to file taxes with the IRS? They were asking a question about the case that they were considering. The jury asked the question, can a person be a member of a conspiracy and not the enterprise? Sure. And because the instructions to them did not make that clear. And so they asked, well, can you be — we've heard lots of testimony about members. We want to know whether or not you can be a part of the conspiracy and not a member of the enterprise. They're asking about this case. They are asking about this case, but they're asking it in a theoretical fashion. But shouldn't a judge have a — shouldn't a — isn't the correct answer, no, not in this case? Well, that would not be consistent with the law as we understand it.  Isn't that the correct — this is Judge Kaczynski's question. Wasn't that the correct answer? We don't — we're not here to talk about theory. In this case, you have to be a member in order to be convicted. Well, the jury asked a fairly sophisticated question. It was not, in this case. It was, can a person be a member of a conspiracy and not of the enterprise? Well, surely they weren't asking because they want to go home and discuss conspiracy law with their families after this case is over. No, but the — They're deliberating, and they want to know whether or not somebody can be a member — can be part of a conspiracy if they're not a member of the enterprise. It's aimed at this case. And the answer in this case is no, correct. The point I'm trying to make, Your Honor, is that the jury did not specifically reference this case. And so the court could not have answered. See, I was with you until you started saying that. Of course the jury didn't reference this case. What do you think they were asking a question about? Criminal procedure? Didn't the piece of paper have the name of the case on it that they sent out, the caption, the case number? Wasn't it right there on the page? Yes, Your Honor. But the point I'm trying to make is that — So you want to ignore that part of the question, the part that says concerning, you know, this case, we have a question. No, I don't, Your Honor. The point I'm trying to make is that the jury asked basically a theoretical question, and the court gave an answer that was legally correct. Let's say we don't accept your premise that this was a theoretical question. Well, everybody thought it was a theoretical question. I understand that, but now you're fighting the question. I'm sorry, Your Honor, I didn't — Now you are fighting the question. Just assume — I mean, what happens if we don't buy your answer that this was a theoretical question? Let's say we're looking and we're saying this was not a theoretical question, this was a practical question. What is your answer at that point? My answer is that the defendants were charged with a conspiracy, and the jury was on the conspiracy. That is, they had to find that the defendants conspired to be part of the enterprise. That's the crime they were charged with, and that, therefore — Is the membership allegation in the indictment, which wasn't given to the jury, is that surplusage? Oh, it's — Is it not part of the charge? It's definitely surplusage, Your Honor. I think the — everything except the charge, the statutory language is surplusage. But it was in the indictment, and that is the theory of our — of the government's case. So I'm not backing away from the — that the government tried to show that these defendants were members. But I am backing — I am asserting that there was no error in the district court's telling the jury a correct statement of the law. Well, there have been some difficulties. Let me ask a question that gets at that. Let's assume the jury came back and said we've concluded that one or more of these defendants were members, but we have concluded that they did what the instruction showed, conspired with others, et cetera. What should the judge have said? May we convict that defendant? What should the judge have said in response to that? I think the answer would be yes, then, because the jury instructions, which the defendants did not object to, allowed the jury to convict if the defendants — if any defendant  But now I'm positing a jury question on top of that, which says, is it okay to convict somebody who wasn't a member of the enterprise? Yes. And the answer is yes, Your Honor. And you don't think that's a variance from the indictment? Well, it's not what we alleged, but it is not a variance. No, I do not believe it's a variance from the indictment, even though it is not specifically what we alleged. But the key allegation of the indictment is under 1962d. Did the defendants conspire to be part of the enterprise? And it's not really an excuse, but the reason that I think the Court gave this instruction is that there were 16 people charged in this count. Only four went to trial. And the Court may have been thinking of other people, the parties may have been thinking of other people that were not before the Court during this period or during this trial. And, well, let me move on to the to the sufficiency of the evidence. The question on the obstruction is a sufficiency claim. It is not a claim as to the instructions. Well, no, there is a claim as to the instructions. The claim that count 20 was not properly instructed. And that's subject to plain error, Your Honor. That the question for obstruction is simply whether it was foreseeable. It doesn't have to be foreseeable that there's a Federal grand jury, that there's a State grand jury, that there's any grand jury. The question is whether it is foreseeable that a defendant's actions would have violated or would have obstructed justice. And in our case, the jury found, and we agree, that it was foreseeable that Acosta would obstruct justice. He — as far as I read the defendant's briefs — Well, to obstruct justice doesn't mean a State proceeding. They do have justice in the State courts. Yes, Your Honor. The statute specifically says, however, that the defendant does not have to be — does not have — that the government does not have to prove a state of mind with respect to whether it's a State or Federal proceeding. So that's the question I was asking your colleagues. What sort of specific intent must the defendant have? Surely the defendant must have the specific intent to do what he did, as opposed to doing it negligently or by mistake, correct? That's correct, Your Honor. And the jury was instructed that the defendant acted corruptly with the intent to obstruct justice. And we believe, and the defendant obviously believed at the time that that is sufficient to inform the jury of an intent requirement. So the specific intent that's required is to obstruct justice? Corruptly and with the intent to obstruct justice. Right, right. But the intent is to obstruct justice. It's not to obstruct a proceeding. I believe that's correct, Your Honor, that the — well, yes. He has to obstruct an official proceeding with an intent to obstruct justice. With the intent to obstruct justice. You have to obstruct a proceeding with the intent to obstruct justice. That's correct, Your Honor. What if the proceeding never occurs? Well — What if I'm really successful in obstructing justice and I destroy all the evidence of the crime? I don't think that matters, Your Honor. I believe that we could still charge a person with obstruction of justice. And there are probably cases that involve a simple obstruction of justice. I don't have them before me, but there are not cases. In this case, the defendant — we allege that the defendant obstructed the proceeding that was eventually brought. But there are probably cases in which the defendant — there is no subsequent proceeding that the defendant obstructs. What's the difference between Count 20 and 21 here? I believe — They're different statutory bases. I believe Count 20 is an obstruction count. Right. And Count 21 is a substantive count. So he conspired to obstruct justice with, I believe, six other people. But is the conspiracy to commit the crime alleged in Count 20? The conspiracy to commit is to commit the crime alleged in Count 21, Your Honor. Okay. So they're based on the same predicate act. Same predicate acts, yes, Your Honor. The obstruction that occurred the night of December 22nd. And also the defendant's lying to police officers subsequent to that. State police officers. Yes, Your Honor. Is there any indication at all that he was aware that the federal investigation was going on, was about to go on, or that it was contemplated or possible? I don't believe there's any indication of that whatsoever. But I don't think it matters. Then why isn't that a failure of proof under Petrak? In Petrak, Your Honor, there was a state proceeding pending. The defendant was actually in jail for the state proceeding and sought to influence people to come up with alibi statements. I thought there was a custom of probation, you know? No? He was a state probationer, yes, Your Honor. So why isn't he worried about state probation? I mean, he is doing these things. You know he's got probation officers after him. Why isn't that an indication that what he's trying to do is keep himself from falling off the wagon of probation? It seems just like Petrak. Your Honor, I would disagree. I don't think it's just like Petrak. He said Petrak had a state proceeding, but there wasn't any here. But you're wrong about that. There was a state proceeding here. There was a state probation, but there was not a state charges filed based on the very allegations that ---- I think you're just mincing words. Well, Your Honor, I don't think so, because I think the cases draw a very firm distinction between a state proceeding being pending and other obstructions. For example, in the Seventh Circuit case, which I'm not Johnson, I believe, the defendant could have been obstructing a state or Federal proceeding, but it was enough that the defendant was trying to obstruct justice. And that is enough in this case as well. There was no, as I said, there was no state charge or no state prosecution pending. And I think that's the difference. So is it enough that there's a theoretical Federal prosecution at the time that the defendant intentionally does these acts with the intent to obstruct justice? Yes, Your Honor. As long as the defendant foresees any official proceeding, any ---- So given what Judge Kaczynski asked before, that means every obstruction of justice falls under the Federal statute, right? Every obstruction of justice unless the defendant specifically intends to obstruct a state proceeding, as in Petra. Well, the cases that you talk about are ones where there are pending state proceedings, and somebody intends to interfere with that. But if there isn't a pending state proceeding, then every obstruction of justice just about is chargeable under the Federal statute. Just about, Your Honor. I would say I would ---- it's possible that the Court can come up with an example that it would not be, but I would say that ordinarily a ---- For example, a garden variety murder would, if you did an obstruction of justice in connection with that, there would always be the possibility of you being prosecuted for violating the civil rights of the victim. That's correct, and that would be a Federal obstruction of justice, if the other elements of obstruction were present. That is, the defendant had the intent. But I would go back to the Seventh Circuit case where the defendant just destroyed drugs, and the Seventh Circuit sort of rhetorically asked, why would the defendant destroy drugs if not to obstruct justice? And the same is true here. Why would the defendant have engaged in the acts he engaged in if not to obstruct justice? And it doesn't matter that it might have been a state or a Federal proceeding as long as he intended to obstruct justice. Well, I thought it had to be a proceeding that obstructs justice, and the proceeding has to be a Federal proceeding. If it's not a Federal proceeding, he can obstruct justice all he wants, right? Isn't that the teaching of Petrak? If the ---- Because in Petrak, too, there was a state proceeding, and he obstructed justice in that case. He obstructed justice in the ---- when the state proceeding was pending at two ---- That's right. So just obstructing justice is not enough. It has to be obstructing justice in the context of a Federal proceeding. It does not have to be a Federal proceeding, Your Honor. Well, how do you reconcile Petrak in that regard? Because there was a state proceeding pending in that case, and the defendant actually sought to obstruct the proceedings in that state proceeding. Right. So that's a case where there's not a Federal proceeding pending, and you said obstructing justice is enough. If there's no proceeding pending, then ---- I'm sorry? If there's no proceeding pending, then obstructing justice is enough. If there's no proceeding pending, then the defendant obstructs justice, that is sufficient to show obstruction of justice in a Federal proceeding. No proceeding pending anywhere? That's correct. That's what happened here. There was no proceeding pending, and the defendant's obstruction is sufficient to show that he obstructed justice in a Federal proceeding. Where do you get that? From the statute, Your Honor. The statute says ---- I mean, the statute says in a proceeding obstructs justice. It doesn't say just obstruct justice in the absence of a proceeding. The statute says that an official proceeding need not be pending or about to be instituted at the time of the offense, and it also says that no state of mind need be approved with respect to the fact that the official proceeding is a Federal proceeding. So it's sufficient as long as the defendant ---- if those two statutory provisions mean anything, it means that the defendant doesn't have to obstruct justice in a ---- for a particular proceeding. As long as there is a ---- the defendant obstructs justice with the intent, the proper intent, he has obstructed justice in a Federal proceeding, if a Federal proceeding is possible. But if the defendant's right and we should adopt Petra, wouldn't the government lose on the obstruction charge under that circumstance? I don't believe so, Your Honor, because in Petra there was a State proceeding pending, and the defendant ---- the Court was quite clear that it was the defendant's obstructive efforts in that proceeding that were the obstruction of justice. He never intended to obstruct justice outside of the State proceeding or other proceedings. But here, where there's no State or Federal proceeding pending, wouldn't Petra stand that you can't obstruct justice if there's no proceeding pending? No, Your Honor. There's ---- I disagree. There's very rarely a proceeding pending when obstruction of justice occurs. And it is sufficient, in our view, if the defendant takes obstructive acts when no proceeding is pending if he's later charged with Federal obstruction of justice. I didn't phrase that very well, but I ---- my point is that the defendant can be charged with Federal obstruction of justice if there's no proceeding pending. Okay. Thank you, Your Honor. I think you have about two and a half minutes left. We can make it three minutes. Thank you, Your Honor. I'll be brief. I appreciate the time. I just want to be brief on the search warrant. That's three minutes negative. We want three minutes. Thank you. On the wiretap issue, I guess my ---- I have three comments. This case, when Mr. Wilson was responding to what the probable cause is, the government continues to use very sort of vague terms, events related to the murder. They continue to discuss business. It's a very clear issue under 2518-3. Did probable cause exist for each of the targeted telephones, each one of them, to believe that the users of those telephones would discuss the shootings from December, the only predicate crimes that were under investigation and permitted under the wiretap? And at least with respect to our clients, the answer is absolutely not. They've never identified that evidence in their briefing. When asked by the court, they didn't identify it. Today, the record is clear. There is a one-off conversation on May 4th, 2011, when Robert Arguello hands a phone to Joe Ortiz and he denies culpability. There's a little bit more. It may not be enough, and that's why I want to ask you. They say, well, I just went and reread the affidavit. That's why I was fooling around. The officer says, well, they're gang members. Gang members, these gang members had phones in the proximity at the time, and they talked to each other, and we didn't get the end. And then they continued, and there's continued conversations going on in March. And we think that's enough to show that they're likely to talk to each other about this crime. Is that enough? I don't think so. And, again, I'm going to always hinge it back to our clients. They have to show they're going to talk about a past event, and that's why this case is like Grant. And you think about it. Why would people under surveillance, let's say they talk about their business, I'm selling drugs, I want to sell a gun, I want to buy a gun. Let's put that aside. What about a completed act of homicide? Why are they going to bring this up sua sponte in May if they've never done it before? And that's why it's speculative like Grant, where the son visits the father, and now they say, well, he visited dad. Maybe he left the gun there. Maybe. But this court was clear that it wasn't probable cause. And even I read with enjoyment Judge Kaczynski's separate opinion in Fagai, I might be mispronouncing that, a couple of weeks ago, I think it was September. Probable cause requires facts indicating that law enforcement officers will find what they are looking for in a place to be searched. This is not a high standard, but the government came nowhere close to meeting it here. With regard to the ten phones, maybe Uruguay was the closest, and so maybe that shouldn't be suppressed under the statute. But for the other nine, they made no showing that in January, February, March, or April, they're using the phones to discuss the December shootings, and in the absence of that evidence, they fall short. I'll pivot unless you have further questions. The last thing I'll say on this subject is necessity and probable cause are separate statutory requirements, and it's not an excuse that we don't have probable cause to say we want to show necessity. And I see I'm over at the one side. I just want to correct the mistake I made. And I'll turn you again to ER-1121, and the government gives you the redacted indictment at SCR-239. It was worse than I thought. They redact all the information from 14 to 20, but the judge left in paragraph 21, which reads, the defendants, who are associates, members, and leaders of the 500-block C Street gang, acting individually and with each other, and also with non-member 500-block C Street gang associates in connection to the commission of the racketeering activities and other criminal conduct. So what went to the jury actually misidentified our clients by characterizing them as potentially associates or leaders and not members, and obviously that's another variance. They got misinformation. So when the judge asked them to match it up to the indictment without the membership allegations, they were matching up to something that was materially different than what was charged. And in the absence of questions, I'll thank the Court for its time and patience. Okay. Thank you. Cases can stand submitted. We're adjourned.
judges: Kozinski, Hurwitz, Keeley